**STATE of Missouri, Respondent,**

v.

**James Curtis ROSE, Appellant.**

**No. 52713.**

Supreme Court of Missouri,
Division No. 2.

June 10, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Sam F. Hamra, Jr., Sp. Asst. Atty. Gen., Springfield, for respondent.

Bernard C. Rice, Blanton, Blanton & Rice, Sikeston, for appellant.

EAGER, Judge.

Defendant was found guilty by a jury of burglary and stealing. Upon a finding by the court of the conviction of a prior felony and service of sentence therefor, defendant was sentenced to concurrent terms of seven and five years. A detailed after-trial motion to set aside the verdict or in the alternative for a new trial, was overruled. We understand from the argument here that defendant did not then intend to appeal; he was represented by most diligent appointed counsel. However, upon a change of heart, not unusual after supposedly expert advice from associates in confinement, he filed here a request for a special order permitting a late notice of appeal under Rule 28.07 V.A.M.R.; this was granted. The trial court allowed defendant a free transcript and re-appointed his trial counsel for the prosecution of the appeal.

The brief of defendant does not directly question the sufficiency of the evidence, but the points raised require a somewhat detailed review. At about 11:30 P.M. on April 29, 1966, Patrolman Robert E. At-kinson, Jr., of the Sikeston police force, received a radio call that a break-in was in progress at Wright's Jewelry Store on New Madrid Street. He immediately drove there, stopped, and found defendant bending over in front of the door of the jewelry store "laying down a white sack and a crowbar"; he knew the defendant at and prior to this time and identified him at the trial. There was a "foyer" or entranceway at the front of the store about 4 feet deep and extending out to the sidewalk; defendant was in this entranceway; the glass window on one side of the entranceway had been broken in a strip about 8 inches high and 1½ to 2 feet long; inside the window only one or two articles were left in the immediate area of the break; Atkinson placed defendant under arrest and radioed for help; at one time defendant tried to walk off. Officer Wallace soon came and took charge of the defendant. The owner, Mr. Wright, was called and soon arrived. Atkinson wrote a label on a piece of note pad and placed it around the crowbar; he wrote on the white sack "4/28/66, 11:30 P.M., Wright's Jewelry Store," with his initials. When Mr. Wright (Charles Raymond) came they took the sack into the jewelry store and emptied its contents on a counter, where Mr. Wright made an inventory or list of the contents, and then replaced them in the sack. Atkinson took the sack and its contents and the crowbar to the Police Station, gave them to the Chief, and they were placed in the "evidence file," a cabinet; he later saw these articles on the day of the preliminary hearing when he got them from that file and took them to court, returning them later. Atkinson did not examine the contents of the sack but saw all of the articles on the night of the occurrence; at the trial he identified the crowbar from the label which he had written and placed on it (saying also that he made a mistake in the date), and he identified the white sack from his own markings upon it.

Mr. Wright had operated the jewelry store for 8 years; he had closed and locked

the front and back doors at about 5 P.M. on the day in question. He and his employees customarily took all diamonds out of the display windows when the store was closed for the night and replaced them with less expensive articles. He kept a "perpetual inventory" of the watches in his stock and he produced the book. He identified 2 blue boxes and the 2 watches in them as having come from his store; he did this primarily by means of the tags which had been placed on the watches by the manufacturer and which had remained on them. On the reverse sides of these tags he had made various entries in his own handwriting. He also testified that he had identified those watches on the night of the break-in, and that they were the same ones. He testified also that he not only identified the tags, but the watches themselves. The watches, the crowbar and the sack were received in evidence; the value of the watches was $39.95 each.

The first point made by defendant is that there was no sufficient "chain of possession" shown as a basis for a proper identification of the crowbar, the sack, the two boxes and the watches. On the evidence which we have outlined we rule against the contention. It is not necessary that some witness must have continually watched an exhibit or kept it in his personal possession. The purpose of such a requirement is to prevent tampering or alteration of exhibits or any substitution. Here the exhibits were all placed in a cabinet regularly used for exhibits, they were seen and taken to court later by Officer Atkinson and they were then replaced in the file. The contention that the crowbar itself should have been marked rather than labeled, is too technical to be of substance. The sack was most specifically identified. There is some contention that Mr. Wright's identification was of the blue boxes and the tags, and not of the watches. We hold that he sufficiently identified the watches, and indeed did so very specifically. All of the exhibits were properly admitted.

Defendant cites the case of State v. Moxley, 102 Mo. 374, 14 S.W. 969, 15 S.W. 556 (1890). There, the charge was that the defendant had murdered his wife by breaking one or more vertebrae in her neck (all of the evidence being circumstantial). The court held that a piece or pieces of vertebrae produced by the coroner were improperly admitted; an autopsy had been held. The coroner had apparently brought to the trial in his pocket two different sets or pieces of bones; he testified that he had initially turned over the piece which he then sought to identify to one person, had received it back from another person, and although he *thought* that they were the same bones, he had no marks or other means of identification, and testified himself that "it will require other evidence to identify it." That situation is not at all comparable to ours.

In State v. Thomas, Mo., 360 S.W.2d 694, it was claimed that an electric drill taken by the police (with other tools) from the defendant's truck which had been parked, unlocked, in front of the police station for several early morning hours, was not properly admissible, although positively identified as one owned and kept by the burglary victim. Defendant admitted his ownership of the other tools. On that contention the court said, at loc. cit. 698: "The inference sought to be thus drawn was that it may have been tampered with and that things found in it had no necessary connection with the defendant. On the merits this question goes to the weight of the evidence and not primarily to its admissibility; certainly, in the court's discretion, it was entirely proper to admit the drill (and the other tools) in evidence, subject to defendant's explanations." And see: State v. Johnson, Mo., 286 S.W.2d 787; State v. Sims, Mo., 395 S.W.2d 445. The admissibility of the exhibits requires no further consideration.

The remaining point raised in the brief concerns instruction No. 1. That instruction required a finding on whether

defendant did "* * * forcibly break and enter a certain store located at 125 North New Madrid, Sikeston, Missouri, the property of Raymond Wright, d/b/a Wright's Jewelry, with the felonious and burglarious intent to steal, take and carry away certain goods, wares, merchandise and/or personal property then and there kept and deposited in said building, and that James C. Rose did then and there feloniously and burglariously steal, take and carry away said goods, wares and merchandise, the personal property of Raymond Wright, with the felonious intent then and there to deprive the owner of the use thereof, and to convert the same to his own use * * *." Defendant submits that: (1) the evidence failed to identify any such goods, etc.; and (2) that the evidence failed to establish that such goods, etc., "were kept and deposited" in Wright's Jewelry Store. The point thus made does not include an objection that the "goods, wares and merchandise" were not sufficiently particularized in the *instruction.* The point is covered generally by what we have said concerning Point One. Two watches were specifically identified as being Mr. Wright's property; from his personally written tags and his inventory book, the only fair inference is that they were kept in the store as a part of the merchandise held there for sale. Contrary to what defendant claims, no speculation whatever was required for a finding that these 2 watches came from, and were stolen from, Mr. Wright's store. The point is denied.

A question which has caused us some pause is the form of the amended information (not specifically designated as such). The question has not been briefed. This information charged that defendant did "willfully, unlawfully and feloniously and burglariously, forcibly break and enter a certain store located at 125 North New Madrid Street, the property of *Raymond Wright,* d/b/a *Wright's Jewelry,* with the felonious and burglarious intent to steal, take and carry away certain goods, wares, merchandise or personal property then and there kept and deposited in the said building and that James C. Rose did then and there feloniously and burglariously steal, take and carry away the said goods, wares, and merchandise, personal property of *Raymond Wright* with the felonious intent then and there to deprive the owner of the use thereof and to convert the same to his own use."

■ We are required under Rule 28.02 to consider the sufficiency of this information without allegation of error. In so far as the charge of burglary is concerned it is sufficient to allege, in the terms of § 560.070, RSMo 1959, V.A.M.S., the breaking and entering of a building (stating the ownership, etc.) in which "goods, wares, merchandise or other valuable thing[s] (are) kept or deposited"; that is what this information does. In a charge of stealing in connection with burglary it is undoubtedly preferable to state more specifically a description of all or a selected part of the property claimed to have been stolen. In State v. Jeffords, Mo., 64 S.W. 2d 241 (1933), the defendant was charged with burglary and larceny; the information alleged the theft of "merchandise to the value of about $40.00." This allegation was held insufficient. It is worthy of note, however, that this case was ruled before the adoption of our Criminal Rules in 1952 which for the first time (see Rule 24.03) provided for a bill of particulars when the information did not sufficiently inform the defendant of the particulars; that rule is still in force. This rule was adopted from the Federal Rules, and so far as we have found there was no statutory precedent for it in Missouri. The rule, then and now, requires a motion within 10 days after arraignment and before trial, unless otherwise prescribed by rule or order of court.

■ In State v. Dowling, 360 Mo. 746, 230 S.W.2d 691, the court modified the ruling in Jeffords, supra, to some extent, although the charge there was grand larceny, not connected with burglary. We

have determined here that the information charges the essential facts of the offense of stealing, and that if defendant desired further particulars he should have filed a motion for a bill of particulars as required by the rule. State v. Bright, Mo., 269 S.W.2d 615, 619–620; State v. Gooch, Mo., 420 S.W.2d 283, 288. Rule 24.11, a re-enactment of the Statute of Jeofails, § 545.030, provides that no information shall be deemed invalid for "any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." We cannot conceive of any real prejudice to defendant here; the charge was of theft from a *jewelry* store, thus indicating to some extent the nature of the property; one sack of jewelry was involved, which was found in defendant's possession at the scene; the charge was proven by the production and identification of 2 watches *out of that sack*. It could make no material difference to defendant what articles were identified and relied on, if in fact they were sufficiently identified, and he could not have been misled.

 The question just discussed was raised orally as a motion to dismiss, in chambers, just as the trial began. The court ruled that in view of the combined charge of burglary and stealing, the defendant had not been deprived "of any of his rights," and overruled the objections. At that time the State offered to tell defendant at any time *what* was claimed to have been stolen, and the value, and called attention to the fact that there had been no motion for a bill of particulars under Rule 24.03. The ruling was well within the discretionary powers of the court, particularly when the motion came at the time it did. We hold that under the present circumstances the amended information was sufficient. Much difficulty may be saved in the future, however, if prosecuting officials will be more specific in their allegations of stealing.

Objection was also raised at the time of trial because the original informa-

tion was entitled "Information for a Misdemeanor," and defense counsel argued that the filing of the subsequent information entitled "Information for a Felony" was "inconsistent" and a departure. The substance of the charge, except for the title and the later addition of the charge of a prior felony, was identical in both informations. The court correctly overruled the oral motion to dismiss made on this ground; the real substance of the charge was the same at all times, and it seems obvious that the prosecutor or an employee simply used the wrong form for the first information. This error could not have operated to the "prejudice of the substantial rights of the defendant upon the merits." Rule 24.11.

The other matters of record which we are required to examine under Rule 28.02 contain no prejudicial error. The judgment is affirmed.

All of the Judges concur.